AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JAMES THOMAS BUTLER II<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br><br>3:18-mj- **1333-MCC** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   January 21, 2018 - April 30, 2018   in the county of   Duval   in the

Middle   District of   Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2251(a) and (e) | production and attempted production of child pornography |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Abbigail Beccaccio, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   10/1/18

_____
*Judge's signature*

City and state:   Jacksonville, Florida

Monte C. Richardson, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Abbigail Beccaccio, being duly sworn, state as follows:

**INTRODUCTION**

1.       I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since May 2012.   I am currently assigned to the Jacksonville, Florida Division of the FBI where I conduct a variety of investigations in the area of violent crimes.   Prior to this assignment, I was employed as Forensics and Technology Unit Supervisor with the Orlando Police Department for approximately 8 years.   I have a Bachelor's degree in Molecular Biology & Microbiology.   I have received law enforcement training from the FBI Academy at Quantico, Virginia.   A substantial portion of my duties are dedicated to investigating cases involving crimes against children under the auspices of the FBI's "Innocent Images" National Initiative.   Since becoming a Special Agent, I have worked with experienced Special Agents who also investigate child exploitation offenses.   In the performance of my duties, I have investigated and assisted in the investigation of matters involving the advertisement for, possession, collection, production, receipt, distribution, and/or transportation of images of child pornography and the solicitation and extortion of children to produce sexually explicit images of themselves.   I have been involved in searches of residences pertaining to the advertisement for, possession, collection, production, and/or transportation of child pornography either through the execution of search warrants or through the subject providing written consent to permit a search to be conducted.

2.     I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, as well as Florida state statutes that criminalize the sexual activity with minors and other methods of child sexual exploitation.   In connection with such investigations, I have served as case agent, have been the affiant for several search warrants and conducted interviews of defendants and witnesses, and have served as an undercover agent in online child exploitation cases.   I am a member of a local child pornography task force comprised of the FBI, U.S. Immigration and Customs Enforcement, the Florida Department of Law Enforcement, the Jacksonville Sheriff's Office, the St. Johns County Sheriff's Office, and the Clay County Sheriff's Office, among other agencies. These agencies routinely share information involving the characteristics of child sex offenders as well as investigative techniques and leads.   As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3.     The statements contained in this affidavit are based on my personal knowledge, as well as on information provided to me by experienced Special Agents and other law enforcement officers and personnel.   This affidavit is being submitted for the limited purpose of establishing probable cause for the filing of a criminal

complaint, and I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that JAMES THOMAS BUTLER II has committed violations of Title 18, United States Code, Sections 2251(a) & (e), that is, production and attempted production of child pornography.

4. I make this affidavit in support of a criminal complaint against JAMES THOMAS BUTLER II, that is, from on or about January 21, 2018, through on or about April 30, 2018, in the Middle District of Florida, the defendant, JAMES THOMAS BUTLER II, did employ, use, persuade, induce, entice and coerce and attempt to employ, use, persuade, induce, entice and coerce a person under the age of 18 years, that is, Minor #1, to engage in any sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that have been mailed, shipped and transported in and affecting interstate and foreign commerce by any means.

5. On April 30, 2018, I applied for and received a federal search warrant for the residence located at 8945 Old Kings Road in Jacksonville, Florida (the "Old Kings Road Search Warrant"). This warrant was issued by United States Magistrate Judge Patricia D. Barksdale, Middle District of Florida in Case No. 3:18-mj-1164-PDB. I also was the affiant for a criminal complaint filed against Paul Edward Lee, Jr. charging him with advertising and solicitation for child

3

pornography in violation of 18 U.S.C. §§ 2251(d)(1)(A), (2)(B), and 2251(e).   This

criminal complaint signed by United States Magistrate Judge Patricia D. Barksdale,

Middle District of Florida, in Case No. 3:18-mj-1163-PDB, and an arrest warrant

was issued for Lee.

6.     On May 2, 2018, I together with other FBI agents and law enforcement

officers, traveled to the residence located at 8945 Old Kings Road in Jacksonville,

Florida 32219, for the dual purposes of arresting Lee and executing the Old Kings

Road Search Warrant.   As the lead FBI case agent assigned to this matter, I

personally participated in both the execution of the search warrant and also in

several of the subsequent interviews that were conducted following the execution of

this search warrant.   The Old Kings Road Search Warrant was executed at

approximately 6:05 a.m. on May 2, 2018, and seven occupants on this residence

were present at the residence, including the original subject of this investigation, Paul

Edward Lee, Jr., and JAMES THOMAS BUTLER II.   All of the occupants of the

residence, including Lee and BUTLER, are registered as either Sexual Predators or

Sexual Offenders with the State of Florida.   I, together with another FBI agent,

conducted a consensual interview of Lee and later arrested him on the arrest warrant

referenced above.

7.     After the completion of Lee's interview, I spoke with other FBI agents

who were at the Old Kings Road residence and who had spoken with the other

4

occupants, and I was given summaries of these interviews.   Specifically, I spoke

with FBI SA Nicholas Privette, who advised me that he and Jacksonville Sheriff's

Office (JSO) Detective Brent Ellis had conducted several consensual interviews with

JAMES THOMAS BUTLER II.   Later, SA Privette drafted written reports of these

interviews, which I have read.   SA Privette and I have also discussed the

information obtained from and about BUTLER during these interviews, which

includes, in substance and among other things, the following information provided

by BUTLER:

      a.    JAMES THOMAS BUTLER II, date of birth June XX, 1980,

Social Security Number (SSN) XXX-XX-XXX, Florida Department of Correction

number J07250, was interviewed at his residence at 8945 Old Kings Road,

Jacksonville, Florida 32219.   After being advised of the identities of the interviewing

Agent (Privette) and Officer (Ellis), that a search warrant was being executed at

BUTLER's residence, and that BUTLER was not under arrest, BUTLER agreed to a

consensual interview.   BUTLER stood in the front yard with the interviewing Agent

and Officer and made a telephone call to his work to advise them of his absence that

morning.

      b.    BUTLER lived in the residence with a group of other men, all of

whom BUTLER knew to be registered sex offenders.   BUTLER named Paul (LEE),

Theodore (TOLLIVER), David (SOSEBEE), Emmanuel (CROCKETT), Terry

(DAFFRON), and Anthony (NEWENHOUSE) as the other occupants. BUTLER believed TOLLIVER had already left for work but knew most of the men were at the residence that morning. BUTLER did not know where NEWENHOUSE was.

      c.     BUTLER did not get along well with Lee, whom BUTLER described as "messed up in the head." BUTLER helped collect rent from the other tenants and described himself as a sort of caretaker for Lee, who had lived there approximately one year. BUTLER had lived in the residence since October 2016. Prior to that, BUTLER served 11 years in prison for "attempted capital sexual battery" on two minor children, which BUTLER stated was later changed to one minor child. At the time of the incident, BUTLER was 19 years old, and the victim, a relative, was five or six years old.

      d.     BUTLER worked as a superintendent for an electrical corporation called ARCFLASH since October 2016. BUTLER was doing well at work and staying out of trouble. BUTLER denied using Lee's phone, or any other device, for accessing child pornography or engaging in sexually explicit conversations with a minor child.

      e.     BUTLER's personal phone was a Samsung Galaxy Prime, phone number 904-412-XXXX. BUTLER owned only his one personal phone. He did not possess any other phone, computer, or other similar device. BUTLER did not have any social media accounts, did not use any phone or computer online

applications or "apps," and did not participate in any sort of online dating website.  BUTLER owned a car, a black Chevrolet Sonic hatchback, and pointed it out to the agent and the officer.

   f. BUTLER understood that the FBI was authorized to seize his phone since it was located at or in the residence for which the FBI had a search warrant.  BUTLER provided verbal consent for the FBI to conduct a search of his phone.

   g. BUTLER handed his phone to SA Privette, which was located on a belt holster on his front right hip.  BUTLER also handed a second phone to SA Privette, which was located in one of his (BUTLER's) back pant pockets.  BUTLER clarified that the phone in his back pocket was his personal phone, and the larger phone that was in the belt holster[1] actually belonged to his mother (whom he he referred to by name.  BUTLER stated that he had been in possession of his mother's phone (the Samsung smart phone) since the previous day and had personal contacts stored in the phone, as well as work contacts.  BUTLER acknowledged his mother's phone was the phone he used to call his work prior to the start of the interview.  To

---

 [1]  Subsequently, I learned that this device is a black Samsung smart phone, model SM-G935A, with telephone number 904-763-XXXX (the "Samsung smart phone").  I have observed this device and saw that it bears a label stamped on its back that reads, "Manufactured in Vietnam."  Accordingly, I know that this device was previously shipped and transported in interstate and foreign commerce from Vietnam to the state of Florida.

7

clarify, BUTLER stated that he routinely used his mother's phone (the Samsung smart phone). BUTLER provided verbal consent for the FBI to conduct a search of both phones. BUTLER's personal phone was not locked, and he provided the password "0PLM" for his mother's phone (the Samsung smart phone).

       h.     BUTLER stated that he was willing to continue the consensual interview and answer any questions that the agents might have regarding the content of his phones.

      8.     After having already spoken with SA Privette and JSO Detective Brent Ellis, I approached BUTLER and advised him of my identity, the nature of the interview, and that BUTLER was not under arrest. BUTLER agreed to another consensual interview with me and SA Privette and provided the following information, in substance and among other things:

       a.     BUTLER denied using Lee's phone, or any other device, for accessing child pornography or engaging in sexually explicit conversations with a minor child. BUTLER stated he never used Lee's phone for any reason and denied any knowledge of Lee's criminal activity. Specifically, BUTLER stated that he did not know that Lee had been engaged in sexually explicit conversations with a minor child.

       b.     BUTLER agreed the interviewing agents treated him fairly and that he was willing to continue answering questions if needed.

9.      After having already spoken with me, SA Privette, JSO Detective Brent

Ellis, BUTLER agreed to continue the consensual interview with SA Privette and

Detective Brent Ellis.   SA Privette and I have also discussed the information

obtained from BUTLER during this interview, which includes, in substance and

among other things, the following information provided by BUTLER:

a.      BUTLER stated that he viewed pornographic material on the

internet by using his mother's phone (the Samsung smart phone).   Specifically,

BUTLER searched for pornography involving celebrities.   BUTLER acknowledged

that he was in possession of his mother's phone (the Samsung smart phone) that day,

which he also used for work.   BUTLER was shown a website called

"celebrities4free.nl" that was currently running on the Samsung smart phone that

BUTLER had provided consent for the FBI to search.   BUTLER stated that he did

not recognize the specific website but noted that it was similar to the type of

pornography that he typically searched for and viewed.   Using the Samsung smart

phone, BUTLER was shown a specific picture on the website that included multiple

girls, some of which appeared to potentially be minors.   BUTLER did not know for

sure if the girls were minors but agreed they looked young.   BUTLER understood

that the website appeared to be from Europe and that such websites might not always

be subject to the same laws regarding child pornography as similar websites in the

United States.   BUTLER agreed that he should be more careful as to which websites

he visited to view pornography. BUTLER denied ever deliberately searching for or finding child pornography.

b.  BUTLER was told that chat communications were located on the Samsung smart phone on Google Hangouts[2] with a user, "Peanut The Unicorn". BUTLER was advised that this conversation with, "Peanut The Unicorn" involved topics of a sexual nature, but BUTLER denied that he was responsible for the conversation.

c.  BUTLER stated that he did not recognize the Google Hangouts name "Peanut The Unicorn" and did not know to whom the name belonged. BUTLER stated that he and his mother occasionally used Google Hangouts on the Samsung smart phone to chat with a particular family member who is a minor child (herein referred to as Minor #1). BUTLER stated in substance that Minor #1 lives with his (BUTLER's) mother, and BUTLER frequently visits this residence under supervision in accordance with his probation conditions.

d.  BUTLER stated that he used the Samsung smart phone and another computer tablet belonging to his mother because the cameras on those devices were better than the camera on his personal cell phone. BUTLER stated that he was not able to access the internet on his personal phone.

---

[2] Based on my training and experience, I know that Google Hangouts is an online communication platform developed by Google, Inc. that provides users with capabilities for online messaging, video chat, and other communication services.

10

e.   BUTLER again denied any knowledge of the name "Peanut The Unicorn" and again denied any knowledge of or involvement with child pornography.  BUTLER knew child pornography was illegal and did not use any phone, computer, or other device to access child pornography.

f.   BUTLER understood the significance of the FBI's investigation and believed it was important to protect children.  BUTLER was willing to continue the consensual interview and answer any further questions that the agents might have regarding the content of his phones and other items found during the search.

10.   After having already spoken with me, SA Privette and JSO Detective Brent Ellis, regarding his possession of devices with access to the internet, as well as his viewing of pornographic material, BUTLER agreed to continue the consensual interview with SA Privette.   Also present were several State Probation and Parole Officers during portions of this conversation.   SA Privette and I have also discussed the information obtained from BUTLER during this interview, which includes, in substance and among other things, the following information provided by BUTLER:

a.   BUTLER was shown a small white piece of paper with handwriting[3] that was found in BUTLER's bedroom inside the residence during the execution of the search warrant at the Old Kings Road residence.   The paper bears

---

[3] I have personally observed this piece of paper and its contents, and it has been preserved as evidence in this case.

11

the following handwritten content:   "Google hangouts- Peanut The Unicorn";

"Dcups"; and "KiK".   BUTLER denied knowledge of the handwritten note and

stated that he did not write it.   BUTLER again denied any knowledge of the Google

Hangouts name "Peanut The Unicorn" and explained that somebody else must have

written the note and placed it in his bedroom.   BUTLER did not believe the note

was found in his bedroom and said he believed that the FBI placed it there.

b.     BUTLER then agreed to walk inside the residence to confirm

which bedroom was his.   SA Privette escorted BUTLER inside the residence and

introduced him to FBI SA David Busic, the agent who found the handwritten

note.   SA Busic showed BUTLER where the note was found, which was inside a bag

that was located in BUTLER's bedroom.   The bag contained receipts and other

items and papers that had BUTLER's name on them.   BUTLER acknowledged the

bag with the items belonged to him and had no further questions for SA Busic.

c.     BUTLER then walked back outside of the residence with SA

Privette in the presence of the probation officers (who were present during the

execution of the Old Kings Road Search Warrant.)   SA Privette advised BUTLER

that the FBI would try to identify the actual person associated with the Google

Hangouts name "Peanut The Unicorn" in an attempt to find the truth.   BUTLER

appeared angry, raised his voice, and pointed his finger at SA Privette while

reiterating that he did not write the note and did not know anything about "Peanut

12

The Unicorn."  SA Privette told BUTLER to calm down and explained the importance of BUTLER being truthful about all aspects of the interview.

d.      SA Privette advised that the FBI would likely want to speak with BUTLER again after speaking with the person associated with the GOOGLE Hangouts name "Peanut The Unicorn", and potentially others who knew BUTLER.  BUTLER agreed to conduct a future interview and stated, "When you talk to them, whatever they say, just remember that I was here today and I told you the truth."  BUTLER explained that he previously passed a polygraph examination regarding the charges of his prior arrest and would be confident taking another one.  BUTLER said he would consider taking a polygraph administered by the FBI in the future.  Thereafter, the interview ended, and BUTLER sat down with the other residents under an outside overhang area to await the conclusion of the execution of the Old Kings Road Search Warrant.

e.      Later that same day, BUTLER was placed under arrest by the Florida state officers due to his failure to abide by his conditions of probation, specifically, his possession and viewing of pornographic material.

11.     Subsequently, the Samsung smart phone used by BUTLER and consensually obtained from BUTLER on May 2, 2018 was preserved as evidence and was imaged by FBI personnel.  On September 21, 2018, I conducted a review of the logical forensic extraction of the Samsung smart phone using an FBI

13

computerized system designed for such purpose.   During this review, I learned the following information:

        a.    The logical forensic extraction of the Samsung smart phone provided information into three primary folders contained on the device for my review.   These folders were titled:   "Attachments", "Images", and "Videos".   The "Images" folder contained approximately 517 images and the "Videos" folder contained approximately 134 videos.

        b.    The images found on the the Samsung smart phone depicted numerous items, including the following:   photos that appeared to depict minor relatives of BUTLER; photos that BUTLER appeared to have taken of himself ("selfies"); selfies of BUTLER with relatives that I believe to be minor children; photos of scenes of what appear to be construction sites (showing such things as unfinished walls and the electrical wiring concealed therein); scenes at music concerts; handwritten notes ("From the desk of James Butler"); at least one image of BUTLER's mother (whom I have positively identified and whose photo I have observed both in the Florida driver's license database (DAVID) and other open source research) using what appears to be an Apple iPhone; and photos of IRS W-2 forms from tax year 2017 bearing BUTLER's name and personal information.   I also observed approximately 35 screenshots that appeared to be captured from

videos, depicting scenes from what appear to be a bedroom and depict an individual whom I have probable cause to believe is Minor #1.

c.      I observed a series of eight images, titled "20180110_220121", "20180110_220126", "20180110_220141", "20180110_220200", "20180110_220218", "20180110_220226", "20180110_220240", "20180110_220252".   I know from training and experience that the file title indicates both the date and time the photograph was taken, as an example "20180110_220121" indicates the photograph was taken January 10, 2018 at 2201 hours 21 seconds.   This series of eight images depict the pages of an instruction manual for a "H.264 1080P remote wireless hidden camera Operations Manuals." Based on my own online open source research, I discovered that several online companies sell this camera.   However, all such cameras appear to be supported by the same software titled, "iMiniCam."

d.      On October 1, 2018, I scanned a visible "QR[4]" code depicted in two of the eight previously listed photographs ("20180110_220121" and "20180110_220126").   I scanned the QR code which resolved to Internet Protocol (IP address) 112.124.40.254 with a specific URL (Uniform Resource Locator).   This URL directed me to options for downloading software or a particular app, these

---

[4] I know based on training and experience that a QR code is a machine-readable code, consisting of an array of black and white squares, typically used for storing URLs or other information for reading by the camera on a smart phone.

options being "Download Android APK and direct install", "Install from Google Play", "IPhone/Ipad AppStore", or "PC Tools Download".   Clicking any of these icons links to a download for the "iMiniCam" software from the applicable app store.   I performed this action using both an Android phone and an Apple iPhone, and both actions lead to this download option.   The description therein states, in pertinent part, "iMiniCam greatly simplifies the use of the IPCamera.   Without complicated network configuration, user can monitor remote IPCamera by using a mobile phone."   During my review of BUTLER's Samsung smart phone, I discovered an app (and its corresponding icon) named "Pro iCam" that has these functionalities.   The Samsung smart phone "Pro iCam" software/app enables users to conduct several different functions, including "Live video," "Snapshot," "Record," and "Alarm."   Moreover, the software appears to have one camera configured for use, connected to a router.

e.   The videos found on the Samsung smart phone depicted numerous items, including the following:   construction sites, music concerts, videos of BUTLER with minor children, and BUTLER narrating numerous videos depicting other occupants of the Old Kings Road residence referenced above and a young adult female.   During one such video, BUTLER, the other residents, and the female engage in graphic sexual conversation, and several of the participants appear to be under the influence of intoxicants.   BUTLER is the person filming this

16

incident, as he briefly points the smart phone's camera at his own face, and I am familiar with his appearance.

      f.    I also observed a color video maintained on the Samsung smart phone that was approximately 8:45 (minutes:seconds) in length.   This color video titled, "20171015_141055," which means that it was produced on October 15, 2017 at 2:10:55 p.m.   This video depicted the following:   BUTLER can be seen and heard speaking with an individual whom I believe to be Minor #1 while on the sand at a beach.   Minor #1 is wearing a two-piece bikini-type bathing suit.   Minor #1 appears to be intoxicated and is seen stumbling and crying.   BUTLER, whose voice I am familiar with, can be heard stating, "Well go ahead and puke" and "And that is why they call it "Four Loko."[5]   BUTLER appears to be holding the smart phone in such a way as to record video without alerting Minor #1 to his activities.   On several occasions during this video, BUTLER holds the smart phone so that Minor #1's breasts are the focal point of the video.   Moreover, BUTLER holds the smart phone on other occasions so that Minor #1's genital and pubic area (covered by the bikini bottoms) is the focal point of the video.   A second minor female is also depicted in this video.

---

[5] Based on my online research, I have learned that Four Loko is a line of formerly caffeinated alcoholic beverages sold by Phusion Projects of Chicago, Illinois.

17

g.     I also observed on the Samsung smart phone approximately 65 color and black and white videos that depict an individual whom I have probable cause to believe is Minor #1 who is present in what appears to be a bedroom lying and/or reclining on the bottom bed of a bunk bed.   The video titles indicate, as described above, that these videos were recorded and produced from on or about January 21, 2018 through on or about April 30, 2018.   These videos capture a wooden bunk bed and other assorted items, including a school backpack with a distinctive floral pattern and several buttons, assorted blankets and comforters, and stuffed toys in some of the video recordings.   These videos also capture the activities of Minor #1 while she is lying on the bottom bunk bed.   Some of these recordings are not sexual in nature and capture only Minor #1 walking into the room and doing other innocent activities.   Other videos depict Minor #1 in various stages of undress, apparently following a shower or a bath, or while lying in bed.   At least five videos capture the lascivious exhibition of Minor #1's genital/pubic area (covered with underwear).   At least one depict Minor #1 as she masturbates.   During one such video, Minor #1 appears to be using a smart phone as Minor #1 masturbates. Minor #1 is depicted holding a phone/tablet or using a laptop computer during the majority of these masturbation videos.   Based on my review of these videos, I believe and it appears that Minor #1 is unaware of the presence of the camera device that is recording these videos.   Further, the field of view of these videos is partially

18

restricted at the top and bottom, suggesting that the camera device has been concealed in an air vent, slats of a closet door, or some other items that appear to offer some degree of concealment and secrecy for the camera.

       h.    The 35 screenshots from the surreptitious video recording of Minor #1 appear to be screen shots of specific frames of the previously described videos, many of which capture the most graphic portions of the pornographic videos depicting Minor #1.   The file titles indicate the screen shots were taken on or about January 22, 2018, and the metadata visible on the video file itself indicate the screenshots are from a recording on or about January 21, 2018.

       12.    During this investigation, I have reviewed both the images and videos on BUTLER's Samsung smart phone and conducted my own online open source research regarding the identity of Minor #1, and learned, among others things, the following:

       a.    The Samsung smart phone contained both images and videos of BUTLER with relatives that I believe to be minor children.   These minor children live with BUTLER's mother and I confirmed this both through contact with Duval County Public Schools Police Department and a JSO police report dated August 13, 2018.   Specifically, this JSO report indicated that police were called to the particular residence in Jacksonville, Florida where BUTLER's mother, Minor #1, and another

19

minor reside.   The report indicates that Minor #1 and another minor child were living at the residence.   No arrests were made on that occasion, and I know that BUTLER was in custody on that date on the violation of probation referenced above.   In the video titled "20171015_141055" that is contained on BUTLER's Samsung smart phone, Minor #1 can be heard talking to BUTLER, and both use specific and identifiable nicknames for each other.

b.   During this investigation, I located Minor #1's Facebook page that shows her true name.   I conducted a review of the photos on this Facebook page and observed a distinctive backpack and what appear to be rails of a wooden bunk beds.   I believe that this is the same backpack and wooden bunk bed depicted in the videos referenced above.   Additionally, I observed a photo on Minor #1's Facebook page that shows distinctive scars on the arm of Minor #1 that I also observed in the video titled "20171015_141055" referenced above.   In sum, based on this information and other information set forth herein, I have probable cause to believe that Minor #1 is the individual depicted in the videos and images referenced above in paragraphs 11.f., 11.g., and 11.h.

13.   On September 27, 2018, I contacted Duval County Public Schools Police Department Lieutenant (Lt.) Amber Gazdick.   Lt. Gazdick advised me, in substance and among other things, that Minor #1 was home schooled and she also provided Minor #1's date of birth, confirming that Minor #1 is under the age of 18

years.   Lt. Gazdick additionally advised Minor #1 resided with the particular

individual (whom Lt. Gazdick specifically named) that, according to information

provided by BUTLER and set forth above, is BUTLER's mother, and further that

Minor #1 and BUTLER's mother reside at a particular residence in Jacksonville,

Florida.   This is the same residence that JSO responded to on August 13, 2018 as

referenced above.

14.    On September 28, 2018, I reviewed a copy of a judgment and

conviction in the Circuit Court, Fourth Judicial Circuit, in and for Duval County,

Florida, Case No. 16-2000-CF-11219-AXXX-MA, showing that on April 2, 2001,

JAMES BUTLER was convicted of one count of attempted capital sexual battery (a

lesser included offense) in violation of Sections 777.04(1) and 794.011(2)(A), Florida

Statutes, and one count of lewd or lascivious molestation in violation of Section

800.04(5)(B), Florida Statutes.   I have also reviewed the Florida Department of Law

Enforcement (FDLE) Sexual Offender/Predator database that JAMES THOMAS

BUTLER was convicted of these offenses on April 2, 2001 and is registered as a

"Sexual Predator" under Florida law.   Accordingly, after consultation with

Assistant United States Attorney D. Rodney Brown, I believe that JAMES

THOMAS BUTLER II has at least one prior conviction under the laws of the State

of Florida relating to sexual abuse involving a minor as described in 18 U.S.C.

2251(e).

15.     On October 1, 2018, FBI SA Privette advised me of the following:

a.      On June 11, 2018, Kara McGraw, an investigator with the Florida Commission on Offender Review, contacted the FBI Jacksonville Field Office to request testimony from SA Privette regarding his interview of and interaction with BUTLER on May 2, 2018.   On June 14, 2018, FBI Jacksonville responded to McGraw and granted approval for SA Privette to provide such testimony.

b.      On August 27, 2018, SA Privette met with McGraw at the Duval County Jail to provide testimony as part of a continued hearing for offender review. The hearing was conducted inside a phone room in the Duval County jail, and the participants were McGaw, SA Privette, BUTLER (who was an inmate at the time), and BUTLER's defense counsel, Russell McCormick.   During the hearing, McGraw asked SA Privette questions regarding his interview of and interaction with BUTLER on May 2, 2018 during the execution of a federal search warrant at 8945 Old Kings Road, Jacksonville, Florida 32219.   SA Privette testified, in substance and among other things, that BUTLER was in possession of at least one computer device with internet capability, that at least one of the devices contained pornographic content which SA Privette showed to BUTLER, and that BUTLER acknowledged the content was pornographic in nature.   BUTLER's attorney cross-examined SA Privette, and BUTLER was also permitted to ask SA Privette direct questions.

22

While asking questions, BUTLER also made numerous statements, including denying that SA Privette showed him pornographic content.

16.    I have learned that BUTLER was subsequently released from custody for this violation on or about August 31, 2018, and has subsequently resided at the residence of his mother as referenced herein.

17.    Based on my training and experience, the apparent surreptitious video recordings recovered from the Samsung smart phone used by and consensually obtained from BUTLER on May 2, 2018 depict Minor #1, whom I have probable cause to believe is a family member of BUTLER who is under the age of 18 years, and further that several of these videos depict Minor #1 engaging in sexually explicit conduct, that is, the lascivious exhibition of Minor #1's genital and pubic area and masturbation.   I also have probable cause to believe that the apparent surreptitious video recordings were produced at the particular residence in Jacksonville, Florida where BUTLER's mother and Minor #1 reside.   I have also learned through Florida DAVID records that as of September 4, 2018, BUTLER lists this particular residence as his current residence.

18.    Based upon the foregoing facts, I have probable cause to believe that from on or about January 21, 2018 through on or about April 30, 2018, at Jacksonville, in the Middle District of Florida, the defendant, JAMES THOMAS BUTLER II, did employ, use, persuade, induce, entice and coerce and attempt to

employ, use, persuade, induce, entice and coerce a person under the age of 18 years,

that is, Minor #1, to engage in any sexually explicit conduct for the purpose of

producing visual depictions of such conduct, which visual depictions were produced

using materials that have been mailed, shipped and transported in and affecting

interstate and foreign commerce by any means.


ABBIGAIL BECCACCIO, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this
_____ day of October, 2018, at Jacksonville, Florida.


MONTE C. RICHARDSON
United States Magistrate Judge

24